UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DYRELL W. JONES,<br><br>                    Petitioner,<br><br>v.<br><br>CHRISTIAN PFEIFFER,<br><br>                    Respondent. | Case No.  17-cv-00466-VC (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

This is a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 filed by California inmate Dyrell W. Jones. The case was administratively closed so that Jones could exhaust his claims in state court and was reopened when Jones filed a motion to lift the stay indicating he had exhausted all claims. Jones filed an amended petition alleging five claims: (1) destruction of material exculpatory evidence; (2) ineffective assistance of trial counsel; (3) insufficient evidence to support the grand jury indictment; (4) cumulative trial errors; and (5) ineffective assistance of appellate counsel.

The respondent filed a motion to dismiss claim one because it was procedurally defaulted and claim three because it was not cognizable on federal habeas review. On February 28, 2020, the Court issued an order denying without prejudice the motion to dismiss claim one and granting the motion to dismiss claim three.

The respondent has filed an answer and memorandum of points and authorities in support of his answer on the merits of the four remaining claims and Jones has filed a traverse. For the following reasons, the petition is denied and a certificate of appealability will not issue.

## PROCEDURAL BACKGROUND

In 2014, a Contra Costa County jury found Jones guilty of the attempted murder of a peace officer and of being a felon in possession of a firearm and ammunition, with an enhancement for personally discharging a firearm. *People v. Jones*, 2016 WL 4538386, *1

(August 31, 2016) (unpublished).  After the trial court found that Jones had several prior felony convictions, it sentenced him to 39 years to life in prison.  *Id.*

On August 31, 2016, the California Court of Appeal affirmed the judgment, but remanded for the trial court to determine if Jones was entitled to conduct credits.  *Id.* at 1-2.  On November 16, 2016, the California Supreme Court denied the petition for review.  Ex. H.

In January 2017, Jones filed a federal habeas petition where all the claims were unexhausted.  This Court stayed the proceedings to allow Jones to return to state court to exhaust his claims.  On December 26, 2017, Jones filed a petition for a writ of habeas corpus in the Contra Costa County Superior Court alleging the first four of his federal claims, which was denied in a written order on February 23, 2018.  Exs. I, J.  On June 19, 2018, Jones filed a petition for a writ of habeas corpus in the California Court of Appeal with the same four claims, which was summarily denied on July 17, 2018.  Ex. K, ECF No. 35 at 94.  On September 17, 2018, Jones filed a petition for a writ of habeas corpus in the California Supreme Court asserting the first four claims and an additional claim of ineffective assistance of appellate counsel; all the claims were summarily denied on February 27, 2019.  Exs. L, M.  On June 13, 2019, Jones filed an amended federal petition.

## BACKGROUND

On May 3, 2011, City of Pittsburg Police Officer Richard Hosier attempted to make a traffic stop of a Cadillac that had failed to stop at a stop sign.  Reporter's Transcript ("RT") 872-73, 877-90; ECF No. 37-4 at 912-13, 917-930.  The driver of the Cadillac did not stop even though the lights on the marked patrol car were on.  *Id.*  Hosier followed the Cadillac through a crowded shopping center and onto a street.  *Id.*  The Cadillac stopped when it hit a wall as the driver attempted to make a 90-degree turn at the end of a roadway.  ECF No. 37-4 at 929.  Hosier's patrol car stopped about one car length behind the Cadillac.  ECF No. 37-4 at 930.  After the Cadillac stopped, the driver, who was later identified as Jones, exited the vehicle.  *Id.*  As Jones exited the Cadillac, the windshield of Hosier's car exploded and glass shards hit him in the face.  ECF No. 37-4 at 931.  Hosier felt at least three impacts to his car.  *Id.*  Hosier started

2

firing back at Jones.  ECF No. 37-4 at 933.  Jones continued to shoot at Hosier as Hosier exited

his vehicle; Hosier returned fire until his gun jammed.  ECF No. 37-4 at 936.  Then, Jones began

to walk south down a little alleyway.  ECF No. 37-4 at 934.  Hosier did not follow because he

felt he was defenseless with his gun not working properly.  ECF No. 37-4 at 937.  Hosier

broadcast over the police radio Jones' description, that he was wearing a red tee shirt, and his

direction of flight.  *Id.*

Later that day, Jones was taken into custody at a nearby residence.  ECF No. 37-4 at 892.

Jones' red tee shirt was later recovered from a garbage can behind the residence.  ECF No. 37-4

at 894.  The tee-shirt was wrapped around a .40 caliber semiautomatic firearm that was later

identified as the gun Jones had used to shoot at Hosier.  ECF No. 37-4 at 744-45.

## LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States."  28

U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a

district court may not grant habeas relief unless the state court's adjudication of the claim:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*,

529 U.S. 362, 412 (2000).  This is a highly deferential standard for evaluating state court rulings:

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond

any possibility for fair-minded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

AEDPA requires a district court to presume correct any determination of a factual issue made by

a state court unless the petitioner rebuts the presumption of correctness by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In this case, the California Superior Court is the highest court to issue a reasoned decision on Jones' claims.

## DISCUSSION

### I. Destruction of Evidence Claim

Jones argues the prosecution intentionally destroyed two pieces of material exculpatory evidence: (1) the windshield of Hosier's patrol car; and (2) the recording of Jones' parole revocation hearing that occurred after the shooting but before trial.

#### A. Destruction of Windshield

##### 1. Legal Standard—Procedural Default

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Id.* at 750.

In its previous order, the Court noted that the state habeas courts, citing *In re Dixon*, 41 Cal. 2d 756, 759 (1953), dismissed this claim because it had not been raised on appeal. The Court found that a dismissal under *Dixon* had been held to be an independent and adequate procedural rule and concluded, "Because the [state] court dismissed claim one on a ground that is an independent and adequate procedural bar, this claim is procedurally barred from federal habeas review unless Jones can provide cause and prejudice for the default." The Court noted that, in his opposition, Jones claimed he should not be held accountable if his appellate counsel

failed to raise this claim and surmised Jones might be attempting to argue cause and prejudice for his default. *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). (A claim of ineffective assistance of counsel may constitute cause). Therefore, the issue now is whether Jones has established cause and prejudice for his default, which first requires the Court to determine if Jones has successfully established a claim of ineffective assistance of appellate counsel.

### 2. Ineffective Assistance of Appellate Counsel

Because Jones submitted this claim only to the California Supreme Court which issued a summary denial, this Court must conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *See Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006). When undertaking an independent review of the record, the federal court must still apply the deference required by § 2254(d)(1). *Harrington*, 562 U.S. at 98-100.

### a. Legal Standard—Ineffective Assistance of Appellate Counsel

To prevail on a claim of ineffective assistance of appellate counsel, Jones must not only show that appellate counsel's failure to raise the destruction of windshield claim was objectively unreasonable, but also that he was prejudiced by counsel's performance, which in this context means that Jones must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, Jones would have prevailed in his appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (like claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are evaluated under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)). It is important to note that appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by the defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason: because he declined to raise a weak issue. *Id.*

### b. Legal Standard—Destruction of Evidence

The government has a duty to preserve material evidence, i.e., evidence whose exculpatory value was apparent before it was destroyed and that is of such a nature that the defendant cannot obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Grisby v. Blodgett*, 130 F.3d 365, 371 (9th Cir. 1997).

Although the good or bad faith of the police is irrelevant when the police destroy material exculpatory evidence, when the evidence is only potentially useful there is no due process violation unless there is bad faith conduct by the police. *Illinois v. Fisher*, 540 U.S. 544, 547-48 (2004); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *United States v. Sivilla*, 714 F.3d 1168 (9th Cir. 2013). Potentially useful evidence is "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood*, 488 U.S. at 57. A *Youngblood* violation will be found only if the petitioner shows: (1) the government acted in bad faith, the presence or absence of which turns on the government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed; and (2) the missing evidence is "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Sivilla*, 714 F.3d at 1172. *See, e.g.*, *Fisher*, 540 U.S. at 547-48 (no bad faith failure to preserve substance seized from defendant which had been tested four times and determined to be cocaine; the substance was only potentially useful evidence because defendant at most could hope he could conduct another test that might show the substance was not cocaine); *Sivilla*, 714 F.3d at 1172 (government did not act in bad faith where exculpatory value of destroyed vehicle was not obvious).

### B. Analysis of Claim of Ineffective Assistance of Appellate Counsel for Failing to Raise Destruction of Windshield on Appeal

Appellate counsel's performance was not deficient for two reasons. First, appellate counsel would know that raising the issue on appeal would be futile—because trial counsel did not object to the destruction of the windshield, the claim on appeal would be procedurally

defaulted under *People v. Chism*, 58 Cal. 4th 1266, 1300 (2014), which held that *Trombetta* claims that could have been raised during the trial, but were not, are forfeited on appeal. Counsel cannot be faulted for not submitting a futile claim on appeal. *See Martinez v. Ryan*, 926 F.3d 1215, 1226 (9th Cir. 2019) (failure to raise meritless argument does not constitute ineffective assistance).

Second, even on the merits, counsel would know the claim was futile because failure to preserve the windshield was not prejudicial. During the trial, officers testified that there were seven bullet holes in the windshield—six tightly clustered holes in the center of the windshield and one hole isolated from the rest. ECF No. 37-4 at 1377. Detective Edgar Sanchez, who was trained in crime scene investigation and reconstruction, testified that the six clustered holes in the windshield were made by shots originating from within the cabin of the patrol car and the one isolated hole was made from a bullet originating from outside the vehicle. ECF No. 37-4 at 783, 785-86. Sanchez also found six .45 caliber casings inside the police car. ECF No. 37-4 at 811.

The defense presented testimony from private criminalist, Peter Barnett. ECF No. 37-4 at 1500. Barnett examined photographs of Hosier's vehicle including the windshield, he did not examine the windshield itself. ECF No. 37-4 at 1504-05. From the photographs, Barnett concluded there was a group of six bullet holes in the center of the windshield and a seventh bullet hole to the left, near the top of the windshield. ECF No. 37-4 at 1516. He determined that at least one of the clustered holes had come from inside the patrol car. ECF No. 37-4 at 1516-17. He could not determine where the other five bullet holes had originated from. ECF No. 37-4 at 1517. Barnett testified that the seventh bullet hole to the left and near the top of the windshield had originated from outside the vehicle. ECF No. 37-4 at 1519.

Thus, the only difference between the testimony of the prosecution's expert and the defense expert was that the prosecution's expert opined that all six of the clustered bullet holes originated from inside the vehicle and the defense expert could only determine that one of the six clustered bullet holes originated from within the vehicle. Both experts agreed that the single bullet hole to the upper left of the windshield originated from outside the vehicle. Therefore, the

prosecution's witness was more damaging to the prosecution's case than the defense witness's testimony.  It is difficult to ascertain what further exculpatory evidence could have been obtained from the defense expert's examination of the actual windshield.

Jones argues the actual windshield would have been useful to determine who shot first. But defense expert Barnett testified that he could not determine who shot first because the windshield was made of laminated glass and, "You can't determine the sequence of bullet holes through laminated glass with any degree of reliability."  ECF 37-4 at 1537.  Therefore, Jones' own expert's testimony establishes that the actual windshield would not have yielded exculpatory evidence.

Based on the above, had appellate counsel raised this claim on appeal, it would have been denied even if the court reached the merits.  Counsel's performance was not deficient for failing to raise a weak claim.  Furthermore, because the claim would have been denied, Jones cannot show that, but for counsel's failure to raise this claim, the outcome of his appeal would have been different.

An independent review of the record shows that the California Supreme Court's denial of the claim of ineffective assistance of appellate counsel based on counsel's failure to raise the claim of destruction of the windshield was not contrary to or based on an unreasonable application of Supreme Court authority.  And, because Jones has not established ineffective assistance of appellate counsel, he has not established cause for his default in state court.

This claim is denied because it is procedurally defaulted and, as discussed above, it is also denied on its merits.

**C. Destruction of Probation Hearing Transcript**

**1. State Court Proceedings**

During the trial, defense counsel moved to dismiss the case on the ground that the prosecution had intentionally destroyed a recording of Jones' June 21, 2011 parole revocation hearing held by the California Board of Prison Terms ("BOP").  The motion stated, in relevant part:

> The exculpatory value of the recording is plain.  The recording
> contains statements of witnesses, specifically Officer Hosier, that
> very likely conflict with Officer Hosier's initial description of
> events and his sworn Grand Jury testimony.
>
> The destruction of the recording denies the defense the opportunity
> to present a defense, as Mr. Jones asserts that the recording would
> actually exonerate him of the alleged crimes.  . . .
>
> The recording was destroyed in bad faith.  First, the act of the
> Pittsburgh Police Department allowing the California Department
> of Corrections to destroy the recording is plainly attributable to the
> state. . . . Detective Reposa, a police officer employed by the City
> of Pittsburg, should have known the significance of the recording.

ECF No. 35 at 38-39.

The trial court held a hearing on the motion to dismiss.  ECF No. 37-4 at 839-865.  At the

hearing both parties agreed that the recording was destroyed after one year by the BOP pursuant

to their routine procedures.  ECF 37-4 at 847, 853.  After argument on the motion, the court

denied it as follows, in relevant part:

> I'm going to deny the motion to dismiss.  There are a number of
> reasons.  I don't think the predicate requirements for a *Trombetta*
> violation have been met.  I don't find the evidence was exculpatory
> and certainly not at the time that the statement was made, even if it
> was later held to be exculpatory.
>
> I don't believe the destruction of the evidence was done in bad
> faith.  I don't agree that the evidence is not replaceable.  And I
> don't believe that the act of destruction can be attributed to the
> Pittsburg Police Department.
>
> . . .
>
> There's no case authority that I've been presented with which
> would support the finding that the Pittsburgh Police Department
> and the Board of Parole Hearings are connected in the way that the
> term "prosecution team" is normally understood.  If these were
> recordings that the police department had that they destroyed or
> that some other law enforcement agency in the county that was
> working on this case . . . had destroyed, that would be a different
> issue in terms of attributing the conduct to the police department.
>
> . . .
>
> I think Officer Hosier testified, was available for cross-
> examination.  And the few cases that deal with this issue have said
> that that is often sufficient to remedy what would otherwise be a
> violation on *Trombetta*.

ECF No. 37-4  at 1307-10.

The state habeas court denied this claim because Jones did not "explain how preservation of those statements would have helped his defense."  ECF No. 37-11 at 5.

### 2. Analysis

The *Trombetta* claim based on the destruction of the video of the parole revocation hearing fails.  There is no question that the prosecution should have taken measures to ensure that the recording was not destroyed.  But because the recording was only potentially exculpatory, the claim falls under *Youngblood*, which requires that the petitioner establish the police destroyed the evidence in bad faith.  *Youngblood*, 488 U.S. at 58.  Jones cannot establish bad faith on the part of the police because the police did not destroy the recording.  The recording was destroyed by the BOP pursuant to its administrative policy which required the destruction of such recordings after one year.  Jones has not cited authority imputing the acts of the BOP, a distinct state entity, to the Pittsburgh Police Department or to the Contra Costa County prosecutor's office.

The denial of this claim by the state courts was not contrary to or an unreasonable application of Supreme Court authority.

## II. Ineffective Assistance of Counsel

Jones argues his trial counsel was ineffective by failing to impeach Officer Hosier and eyewitness Samuel Isaac and by failing to obtain Hosier's personnel file.  The state court, citing *People v. Richardson*, 43 Cal. 4th 959, 1038 (2008) and *In re Dixon*, 41 Cal. 2d at 759,  denied all the ineffective assistance of counsel claims as barred because they could have been raised on direct appeal, but were not.  ECF No. 37-11 at 3-4.  As stated previously, the *Dixon* bar is an independent and adequate procedural rule which bars review of these claims in federal habeas proceedings unless Jones establishes cause and prejudice for the default.  As discussed previously, Jones fails to do this.  Therefore, these claims are procedurally barred.

Even if they are not procedurally barred, the claims fail on the merits.

**A. Legal Standard**

To prevail on a Sixth Amendment claim for ineffectiveness of counsel, a petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 U.S. at 688.  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Id.*

A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254.  *Cullen v. Pinholster*, 563 U.S. 170, 202 (2011); *Premo v. Moore*, 562 U.S. 122-23 (2011).  The general rule of *Strickland*, *i.e.*, to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA."  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010).  When § 2254(d) applies, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

**B. Officer Hosier**

Jones argues trial counsel was deficient because he failed to cross-examine Hosier on inconsistencies in his various statements.  Jones points out that Hosier told Detective Reposa that he fired a single shot through his windshield, but evidence showed Hosier fired at least six shots from inside his patrol car.  Jones also points out that Hosier told Sergeant DuPont that he fired two shots before his gun jammed, but at the trial, the prosecution's expert, who tested Hosier's gun, found it was in working order.

A review of the record shows that counsel did cross-examine Hosier on the issues Jones raises.  On direct examination, Hosier testified he did not know, at the time, how many rounds he

11

fired from inside the patrol car.  ECF 37-4 at 933-34.  Hosier testified that, after he exited his

vehicle, he shot once at Jones and then his gun jammed.  ECF 37-4 at 936.

      On cross-examination, the following colloquy took place:

> Q:     Earlier you testified that when – the person you've
>         identified as Mr. Jones, when he came out of the car, you
>         described the arm being extended, correct?
>
> A:     That's correct.
>
> Q:     When you were describing the incident to Detective
>         Reposa, you actually described the incident in the
>         following way: "That it was so quickly, I didn't see his
>         hand come up and point at me."  Do you recall saying that?
>
> A:     No.
>
> Q:     Would looking at a transcript of the interview refresh your
>         recollection?
>
> A:     It might.

ECF No. 37-4 at 974.

      Defense counsel then gave Hosier a copy of the transcript to read, and when Hosier said

that did not refresh his recollection, defense counsel played a recording of Hosier's interview

with Reposa.  ECF 37-4 at 975.  After the recording was played, counsel's cross-examination of

Hosier continued:

> Q:     Do you recall, today, sitting in the car at the time of the
>         gunshots and you taking out your firearm; correct?
>
> A:     That's correct.
>
> Q:     And firing through the windshield; correct?
>
> A:     That's correct.
>
> Q:     And you told Detective Reposa back on May 3rd, 2011,
>         that you fired a single shot through the windshield; is that
>         correct?
>
> A:     That's correct.
>
> . . .
>
> Q:     I'm going to show you what's been marked as Defense
>         Exhibit K. . . . Okay.  This photograph is the interior of

your patrol car; is that correct?

A:      That's correct.

Q:      All right.  And when I refer to this photograph, it's Defense Exhibit Triple K, is that an accurate depiction of your windshield after the incident?

A:      That's correct.

Q:      Okay.  The windshield appears to depict multiple bullet holes in the – just above the steering wheel; is that correct?

A:      That's correct.

. . .

Q:      And I'm going to point with my pen right here.  These appear to be bullet holes; is that correct?

A:      That's correct

Q:      And there's a total of one, two, three, four, five, six bullet holes just above – what appears to be bullet holes just above the dash; is that correct?

A:      That's correct

Q:      And if you look to the upper left of the Defense Exhibit Triple K, there is a bullet hole in the upper left corner; is that correct?

A:      That's correct.

Q:      Just beyond the bullet holes, you can see, beyond the windshield, the location of the – Mr. Jones' Cadillac; is that correct?

A:      That's correct.

Q:      And it appears, based on this picture, that the Cadillac is directly in front of those bullet holes; is that correct?

A:      That's correct.

Q:      When you were speaking with – I'm going to go back to your interview with Sergeant DuPont . . . When you were speaking with Sergeant DuPont on May 3rd, just after the incident, you indicated to him that you had fired – based on what you recalled, you had fired two shots; is that correct?

A:      I believe I told him three.

Q:      Would looking at the summary of your statement from

Sergeant DuPont's report refresh your recollection?

A:     It could.

       [Hosier reads report]

Q:     Does that refresh your recollection?

A:     Yeah.

Q:     Okay. . . . So you recall telling Sergeant DuPont at that
       time that you had fired two rounds – getting – to use the
       wording in here, "Getting off two rounds before the gun
       jammed;" is that correct?

A:     Yeah.  Because I could only see two casings in the car at
       the time.

Q:     Understood.  But in terms of what you told him, do you
       recall making that statement?

A:     I may have said that to him.  I don't exactly recall.  It was
       chaos at the moment.  I may have told him two.  I may have
       told him more.  I don't know.

Q:     Understanding that you had just been in a situation where
       you were exchanging gunfire – very stressful situation; is
       that a fair statement?

A:     Very fair statement.

Q:     After you had that conversation with Sergeant DuPont, as
       we discussed just a little while ago, you had a subsequent
       interview with Detective Reposa; is that right?

A:     That's correct.

Q:     And I believe you said you recalled telling the detective
       that you had fired only a single shot through the
       windshield; is that right?

A:     According to the – according to my statement I did, yes.

Q:     I'm going to refer back to, I think, what has been referred
       to – what is Defense Exhibit Triple K, the windshield, I
       think as we've discussed, indicates far more gunshots than
       that; is that a fair statement?

A:     That's correct.

ECF No. at 976-80.

       As the colloquy reveals, defense counsel did exactly what Jones criticizes him for failing

to do.  Counsel cross-examined Hosier on his inconsistent statements about how many shots he fired from within the patrol car.  Counsel carefully laid out, for the jury to hear, that Hosier first told an officer he fired one shot and, in a later interview, he told a sergeant he fired two shots.  Defense counsel then showed Hosier the photograph of the windshield of his patrol car which showed at least six bullets had been fired through the windshield, which experts opined had come from within the vehicle.

Regarding Hosier's statement that his gun jammed, Jones points to no statement Hosier made that his gun did not jam.  Therefore, counsel could not impeach Hosier with a prior inconsistent statement on this issue.  However, the prosecution's gun expert testified that she tested Hosier's gun and found the gun functioned properly.  ECF 37-4 at 1075-79.  Therefore, Hosier's credibility about the gun jamming was placed into question by the prosecution's own witness.  In his closing statement, counsel emphasized the inconsistencies in Hosier's testimony, including his mistake about the number of bullets he fired from within his patrol car and his claim that his gun jammed, which was disputed by the prosecution's gun expert.  ECF No. 37-4 at 1741-42.  He summed up Hosier's testimony to the jury by stating, "All of these points, all of these issues, undermine the credibility of the officer's testimony and the credibility of his claims about what happened on May 3rd, 2011."  ECF No. 37-4 at 1742.

Based on this record, Jones has failed to show defense counsel was ineffective in cross-examining Hosier.

### B. Samuel Isaac

Jones points out that, when questioned by a police detective, eye-witness Samuel Isaac stated that Jones had his back to Hosier and that he saw Hosier pointing his weapon at Jones when Hosier was standing outside his patrol car.  However, when asked about this by defense counsel, Isaac stated, "I don't remember telling him that."  Jones also notes Isaac testified he did not remember telling the detective that he heard two more gunshots after seeing a black male running toward him or that the black male was limping.  Jones argues counsel was ineffective for failing to adequately cross-examine Isaac on these points.  ECF No. 35 at 27.

Isaac was a defense witness. On direct examination, defense counsel elicited testimony from Isaac that he did not ever see a gun in Jones' hand and he never saw Jones point a gun in the direction of Hosier.  ECF No. 37-4 at 1225-26.  This testimony was helpful to Jones' defense. And, defense counsel, on cross-examining prosecution witness Detective McSorley, elicited testimony that, when McSorley interviewed Isaac after the shooting, Isaac told him, "when he looked out of his office window, he saw a police officer pointing a gun directly at a black male adult."  ECF No. 37-4 at 1234.  Counsel also elicited the following testimony from McSorley: (1) Isaac told him the black male adult was running toward a drive-through and, as Isaac was watching, he heard two more pops, or gunshots; and, (2) Isaac told him the black male appeared to be limping as he was running away from the officer.  ECF No. 37-4 at 1234-35.  Thus, even though counsel did not elicit the exculpatory evidence Jones argues he should have from cross-examining Isaac, counsel did elicit this information during his cross-examination of McSorley.

Because defense counsel elicited the testimony that Jones claims he did not, Jones' claim of ineffective assistance of counsel fails.

### C. *Pitchess* Motion

Jones argues counsel was ineffective for failing to move for discovery of Hosier's personnel file under *Pitchess v. Superior Court*, 11 Cal. 3d 531 (1974), codified in sections 1043 through 1045 of the California Code of Evidence.

In addition to holding that this claim was procedurally defaulted, the state court denied it on the merits, as follows:

> Petitioner contends only that a *Pitchess* motion "should have been filed on EVERY officer to check, if not discredit the . . . service, conduct, [and] character."
>
> Thus, petitioner has not pleaded a prima facie showing for claim 2. *See In re Reno*, 55 Cal. 4th 428, 483 (2012) (reiterating the principle that "vague, conclusory allegations" in a habeas petition are subject to summary dismissal); *In re Avena*, 12 Cal. 4th 694, 730 (1996) (rejecting an IAC claim "that [trial counsel] was constitutionally ineffective for failing to make a *Pitchess* motion where petitioner did "not  present any evidence — other than his bare assertion . . . . He [did] not show, for example, what [trial counsel] would have discovered had he made a *Pitchess* motion.")

(emphasis added).

ECF No. 37-11 at 4-5.

Under state law, a defendant may, in some instances, make a motion under *Pitchess* to compel the discovery of evidence in the arresting officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. *People v. Mooc*, 26 Cal. 4th 1216, 1219 (2001). The motion must be supported by affidavits showing good cause for the discovery, by demonstrating the materiality of the information to the pending litigation and by stating upon reasonable belief that the police agency has the records or information at issue. *Warrick v. Superior Court*, 35 Cal. 4th 1011, 1019 (2005). The information sought must be "requested with adequate specificity to preclude the possibility that defendant is engaging in a 'fishing expedition.'" *City of Santa Cruz v. Municipal Court*, 49 Cal. 3d 74, 94 (1989).

Jones theorizes that because Hosier gave "multiple inconsistent statements regarding the events of the shooting prior to trial," a reasonable attorney would have moved to access his personnel information. ECF No. 35 at 28-29. He then speculates that the personnel file would provide prior incidents of use of force, allegations of excessive force, citizen complaints and information gathered during the officer's pre-employment background investigation, all of which could be relevant to impeaching Officer Hosier's credibility. ECF No. 35 at 29.

It seems likely that counsel should have attempted to obtain Hosier's personnel file. After all, this was a case in which Hosier testified that Jones shot at him. But the Court cannot say that any reasonable jurist would conclude that defense counsel's failure to seek the personnel file constituted deficient performance. Under California law, an affidavit supporting a *Pitchess* motion must show the materiality of the information to the pending litigation. Because Jones only speculates about the information that would be found in Hosier's personnel file, counsel could have reasonably believed that making such a motion would be futile because it would have been denied. *See Burciaga v. Warden*, 2018 WL 6133723, *11 (C.D. Cal. 2018) (mere speculation that there might be useful information in an officer's personnel file does not support a *Pitchess* motion); *Edmonds v. Foulk*, 2015 WL 1306492, *7 (N.D. Cal. 2015) (denying

ineffective assistance claim because petitioner did not show what *Pitchess* motion likely would have uncovered); *Juan H. v. Allen*, 408 F.3d 1262, 1273 (9th Cir. 2005) (trial counsel cannot have been ineffective for failing to raise a meritless motion).

Similarly, the Court cannot say that any reasonable jurist would conclude that Jones was prejudiced by the failure to seek the personnel file.  Jones has not shown that Hosier's personnel file contained anything that would have assisted his case, let alone have persuaded the jury that its verdict should have been different.  *See Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.1997) (mere speculation about evidence possibly contained in an officer's personnel files is insufficient to demonstrate petitioner was prejudice by counsel's failure to file *Pitchess* motion); *Hill v. Curry*, 2008 WL 2024987, *9-10 (N.D. Cal. May 8, 2008) (same).

Therefore, the state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court authority.

## III. Cumulative Error

Jones argues that the cumulative effect of the alleged constitutional errors violated his right to a fair trial.  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  *Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003).  However, Jones has not shown that the alleged errors—even if they were indeed errors— cast meaningful doubt on the verdict.

## IV. Ineffective Assistance of Appellate Counsel

In his petition to the California Supreme Court, Jones argued appellate counsel was ineffective for not raising any of the three claims addressed above.  In the previous section on procedural default, the Court concluded Jones did not establish appellate counsel was ineffective for failing to raise a *Trombetta* claim about the destruction of the windshield.  The Court has also concluded that Jones failed to establish his *Trombetta* claim about the destruction of the parole hearing video, his ineffective assistance of counsel claims or his cumulative error claim. Therefore, the California Supreme Court's denial of this claim was not contrary to or an

unreasonable application of Supreme Court authority.

## CONCLUSION

For the reasons stated above, the petition for a writ of habeas corpus is DENIED. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment in favor of the respondent and close the file.

**IT IS SO ORDERED.**

Dated: February 26, 2021

VINCE CHHABRIA
United States District Judge